UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TARVIS WILSON,

    Plaintiff,

v.                                                                         Case No. 5:15cv193-MP/CJK

JULIE JONES, Secretary,
Florida Department of Corrections,

    Defendant.
_____/

ORDER and
REPORT AND RECOMMENDATION

    Plaintiff, a prisoner proceeding *pro se*, has filed a second amended civil rights complaint under 42 U.S.C. § 1983 (doc. 29) and a "Change of Venue Order" (doc. 30).  Upon review of the second amended complaint, the undersigned concludes that all of plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted except for plaintiff's Eighth Amendment excessive force claim against defendants Sergeant Thomas and Officer Donovan.  In addition, the "Change of Venue Order" will be construed as a motion to change venue and denied.

BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff is an inmate of the Florida penal system currently confined at Suwannee Correctional Institution.  Plaintiff initiated this lawsuit on July 26, 2015, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983.  (Doc. 1).  On May

4, 2016, plaintiff filed the second amended complaint, the operative pleading in this action. (Doc. 29). The second amended complaint names four defendants: Sergeant Thomas, Officer Donovan, Officer Thomas, and Nurse M. Hamilton. (Doc. 29, p. 1-3).[1] All four defendants were employees of Apalachee Correctional Institution ("Apalachee CI") at the time of the events described in the complaint. (*Id.*). The complaint sets forth the following factual allegations.

While located at Apalachee CI on January 31, 2015, plaintiff was placed in hand restraints in preparation for being taken to the shower. (*Id.*, p. 8). Officer Thomas electronically opened plaintiff's cell door from the staff booth. (*Id.*). As Sergeant Thomas escorted plaintiff to the shower, Sgt. Thomas said, "damn you got so close to me are you trying to kiss me or something?" (*Id.*, p. 9). After plaintiff told Sgt. Thomas "don't play no homosexual games with me," Sgt. Thomas replied, "I'm not playing, I'm serious." (*Id.*). Sgt. Thomas then stated "I don't see you, I'm not scared of you, lil punk. You want to have a staring contest?" (*Id.*). Sgt. Thomas began staring at plaintiff and asked plaintiff four times what plaintiff saw in Thomas's eyes. (*Id.*). In response to Sgt. Thomas's "'on-going' verbal onslaughts," plaintiff stated, "you a bitch." (*Id.*). Sgt. Thomas responded, "I got yo bitch, I'm a show you who a bitch is you just watch." (*Id.*).

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

Between 4:00 and 5:00 a.m. the next morning, Officer Donovan dropped two Religious Diet Program ("RDP") bags through plaintiff's cell door flap.[2] (*Id.*). One of the bags had food in it and the other was empty. (*Id.*). After realizing the bag intended for him was empty, plaintiff stuck his right arm out of the flap and requested that Officer Donovan summon the captain. (*Id.*). Donovan informed plaintiff that Sgt. Thomas told Donovan "to give [plaintiff] that for last night." (*Id.*). Officer Donovan began threatening plaintiff and called Sgt. Thomas over to plaintiff's cell on a walkie-talkie. (*Id.*, p. 9-10). Sgt. Thomas forced an empty cereal bowl through plaintiff's door flap and then forced plaintiff's arm back into the cell through the flap. (*Id.*, p. 10).

"Seconds later," Officer Thomas electronically opened plaintiff's cell door from the officer's station. (*Id.*). Sgt. Thomas entered plaintiff's cell and punched him in the face and body while using a set of handcuffs as brass knuckles. (*Id.*). As a result, plaintiff's face and forehead swelled up. (*Id.*). After telling plaintiff's cellmate to sit on the bed, Officer Donovan punched plaintiff and wrestled him to the ground. (*Id.*). Donovan held plaintiff down on the ground, kneeing and elbowing him. (*Id.*). Donovan also called plaintiff a "pussy nigga and fuck nigga." (*Id.*). Plaintiff's cellmate "sought to end the physical abuse by pleading for Ofc. Donovan

---

[2] Plaintiff indicates he "is of the Islamic faith and exercise religious dietary practices 'ritually' via (RDP) religious diet program meals at specific times of the day (morning, noon, and night)." (Doc. 29, p. 8).

Case No. 5:15cv193-MP/CJK

to stop hitting plaintiff and get off the plaintiff." (*Id*.). "Eventually" Officer Donovan and Sgt. Thomas exited plaintiff's cell, leaving him "hurt and in pain on the floor." (*Id*.).

On February 3, 2015, Nurse M. Hamilton examined plaintiff. (*Id.*, p. 11). Nurse Hamilton falsified documents indicating plaintiff had no injuries, "when in fact the plaintiff sustained various head, body, and face injuries." (*Id*.). The extent of the injuries "was left undetermined due to defendant Nurse Hamilton's negligence to provide plaintiff the requisite and adequate medical treatment for a head injury[.]" (*Id*.).

Based on the foregoing fact allegations, plaintiff claims: (1) his First Amendment right to free speech was violated when Sgt. Thomas threatened "the plaintiff for a statement plaintiff made to a question repeatedly asked by Sgt. Thomas, humiliating also depriving plaintiff of his common human dignity"; (2) all four defendants violated the Eighth Amendment by "using physical force against the plaintiff without need or provocation," by "failing to intervene to prevent the misuse of force," or by "unofficially aiding, condoning, concealing and/or directly perpetrating the wanton and malicious battery of plaintiff"; (3) Sgt. Thomas, Officer Donovan, and Officer Thomas violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment by "neglecting to provide plaintiff an environment free from staff abuse(s) and adequate medical treatment after being

maliciously battered by defendants Sgt. Thomas and Ofc. Donovan"; and (4) Nurse Hamilton violated the Eighth Amendment by failing "to provide the necessary treatment for the plaintiff's head injury (possibly concussion), follow-up examination and treatment and protocol for a head injury (possibly concussion), and a X-ray of the face and CAT scan to see was there any brain damage[.]" (*Id.*, p. 12-13). For relief, plaintiff seeks: (1) declaratory relief; (2) injunctive relief; (3) compensatory damages; (4) punitive damages; and (5) any other relief deemed just and proper. (*Id.*, p. 12, 14-15).

## DISCUSSION

When a prisoner files a civil action seeking redress from a governmental entity or employee, 28 U.S.C. § 1915A mandates that the district court dismiss the complaint, or any portion thereof, if the court determines it is "(1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all well-pleaded factual allegations in the complaint as true and

evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice.  5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008).  Further, only <u>well-pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff.  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting*  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009))); *see also Randall v. Scott*, 610 F.3d 710, 709-10 (11th Cir. 2010) (holding that a district court determining whether to dismiss a complaint for failure to state a claim "shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."); *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*,

556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. Accordingly, the allegations must nudge the claim "across the line from conceivable to plausible." *Id.* at 570.

Officer Thomas

Plaintiff alleges Officer Thomas violated his constitutional rights by electronically opening plaintiff's cell door immediately before Sergeant Thomas and Officer Donovan attacked him. Specifically, plaintiff asserts that "defendant Officer Thomas, acting in conspired concert with co-defendants' wrongdoings maliciously breached plaintiff's cell door via control panel from the officer's station, to allow

and aid defendants Sgt. Thomas and Ofc. Donovan could enter plaintiff's cell and maliciously batter the plaintiff." (Doc. 29, p. 10).

> To make a failure to protect claim under the Eighth Amendment, [plaintiff] must plead facts that establish "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Deliberate indifference means that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

*Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013). Despite being advised of the applicable legal standard in a previous order (doc. 25, p. 10), plaintiff has failed to plead facts sufficient to establish that Officer Thomas knew that opening the cell door would expose plaintiff to a substantial risk of serious harm. Plaintiff's assertion that Officer Thomas acted "in conspired concert" with Sergeant Thomas and Officer Donovan is a legal conclusion and not entitled to a presumption of truth. Plaintiff's factual allegations fail to nudge his Eighth Amendment claim against Officer Thomas across the line from conceivable to plausible. The allegations against Officer Thomas, therefore, should be dismissed for failure to state a claim.

Nurse Hamilton

Plaintiff claims Nurse Hamilton violated his Eighth Amendment rights by failing to provide him with adequate medical care. "To prevail on a deliberate indifference to serious medical need claim, [plaintiff] must show: (1) a serious

medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (*citing Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). To establish a defendant was deliberately indifferent, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)).

Nurse Hamilton examined plaintiff two days after the alleged assault by Officer Donovan and Sergeant Thomas. Plaintiff claims Nurse Hamilton falsified medical records to indicate plaintiff had no injuries after the alleged assault "when in fact the plaintiff sustained various head, body, and face injuries." (Doc. 29, p. 11). Plaintiff also asserts Nurse Hamilton violated the Eighth Amendment by failing "to provide the necessary treatment for the plaintiff's head injury (possibly concussion), follow-up examination and treatment and protocol for a head injury (possibly concussion), and a X-ray of the face and CAT scan to see was there any brain damage[.]" (Doc. 29, p. 13).

Plaintiff has failed to establish any element of a deprivation of medical care claim. Although plaintiff vaguely claims he had "head, body, and face injuries" and speculates that he "possibly" had a concussion, he has not alleged facts showing he

had a serious medical need. *See Mann*, 588 F.3d at 1307 (a serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

Plaintiff's allegations also do not suggest Nurse Hamilton acted with deliberate indifference. Plaintiff indicates "the extent of damage was left undetermined due to defendant Nurse M. Hamilton's negligence to provide plaintiff the requisite and adequate medical treatment for a head injury[.]" (Doc. 29, p. 11). Negligence, however, does not equate to deliberate indifference. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted) (the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Likewise, the claim that Nurse Hamilton should have ordered additional testing does not rise to the level of a constitutional violation. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."). Moreover, plaintiff has not alleged Nurse Hamilton's actions caused his condition to worsen or resulted in permanent harm. *See Baez v. Rogers*, 522 F. App'x 819 (11th Cir. 2013)

(affirming dismissal of § 1983 complaint when prisoner failed to allege the defendant "acted with deliberate indifference or that . . . his inguinal hernia or entrapped nerve worsened or that he suffered any permanent harm due to [the defendant's] conduct"). Accordingly, plaintiff has failed to state an Eighth Amendment claim against Nurse Hamilton.[3]

First Amendment

Plaintiff claims his First Amendment rights were violated when Sergeant Thomas threatened him after plaintiff called Sgt. Thomas a bitch. (Doc. 29, p. 12). To prevail on his First Amendment claim, plaintiff must establish: (1) his speech was constitutionally protected; (2) he suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (*citing Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, plaintiff cannot state a First Amendment retaliation claim because his statement to Sergeant Thomas is not protected speech. *See* Fla. Admin. Code r. 33-

---

[3] To the extent plaintiff seeks to hold Nurse Hamilton liable based on the falsification of medical records or the failure to follow protocol, those allegations also fail to constitute an Eighth Amendment violation. *See Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates."); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[F]ailure to follow prison rules or regulations do not, without more, give rise to a constitutional violation.").

601.314, 1-4 (prohibiting "disrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like"); *Smith*, 532 F.3d at 1277 (prisoner's "false and insubordinate remarks" not protected speech); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (prisoner's comment that hearing officer was "a foul and corrupted bitch" not protected speech). Thus, plaintiff's First Amendment claim against Sergeant Thomas should be dismissed.

Fourteenth Amendment

Plaintiff asserts Sergeant Thomas, Officer Donovan, and Officer Thomas "deprived plaintiff equal protection and treatment of the law" and "denied the plaintiff due process of law" by "neglecting to provide plaintiff an environment free from staff abuse(s) and adequate medical treatment after being maliciously battered by defendants Sgt. Thomas and Ofc. Donovan[.]" (Doc. 29, p. 13). To the extent plaintiff seeks to hold the defendants liable for an independent substantive due process violation, his claim fails. "Protection that the substantive prong of the Due Process Clause provides to convicted prisoners with regard to excessive force . . . overlaps with that same protection provided to these individuals by the Eighth Amendment." *Jordan v. Cobb Cnty., Ga.*, 227 F. Supp. 2d 1322, 1333 (N.D. Ga. 2001); *see also Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (citations and internal quotes omitted) ("It would indeed be surprising if, in the context of forceful prison security measures, conduct that shocks the

conscience or afford[s] brutality the cloak of law, and so violates the Fourteenth Amendment, were not also punishment inconsistent with contemporary standards of decency and repugnant to the conscience of mankind, in violation of the Eighth."). Furthermore, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the claims." *Crenshaw v. Lister*, No. 2:03cv134-FtM-29SPC, 2008 WL 151881 (M.D. Fla. Jan. 15, 2008) (*citing Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). Because the Eighth Amendment provides an explicit source of constitutional protection for convicted individuals, it controls the analysis of plaintiff's excessive force claim.

The Equal Protection Clause requires the government to treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To establish an equal protection violation, plaintiff must demonstrate that he is similarly situated to others who received more favorable treatment, and that his discriminatory treatment was based on some constitutionally protected interest, such as race. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Plaintiff has not shown the defendants' alleged treatment of him was based on a constitutionally protected interest. Instead, plaintiff suggests the alleged attack by Sergeant Thomas and Officer Donovan stemmed from

a verbal exchange he had with Sergeant Thomas.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

The Supreme Court has recognized "class of one" equal protection claims where a plaintiff asserts that he was irrationally discriminated against on an individual basis, rather than as a member of a particular group.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  A plaintiff can establish a "class of one" claim by showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id*. at 564.  "To be 'similarly situated,' the comparators must be prima facie identical in all relevant respects."  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation and emphasis omitted).  Plaintiff, however, has failed to identify any similarly situated individual who was treated differently from him.  In civil rights cases, more than conclusory and vague allegations are required to state a cause of action under 42 U.S.C § 1983.  Thus, the complaint fails to state an equal protection claim against any of the named defendants.  *See Novak v. Cobb Cty.-Kennestone Hosp. Auth.*, 849 F. Supp. 1559, 1572 (N.D. Ga. 1994).  Because plaintiff's allegations do not establish a Fourteenth Amendment violation, the claim should be dismissed.

Motion to Change Venue

After the filing of the second amended complaint, plaintiff submitted a "Change of Venue Order," (doc. 30) which the court construes as a motion to change venue. Plaintiff contends a change of venue is necessary to provide plaintiff with the fair and impartial hearings mandated by the Sixth Amendment, as well as the equal protection and treatment required by the Fourteenth Amendment. Plaintiff claims "there exists historical and competent evidence of racial profiling, bigotry, discrimination, and various other dimensions of prejudices disfavoring plaintiff, in which contrastingly favors the defendants within their 'home' region of peers, relatives, and other favorable ties[.]"

Title 28 U.S.C. § 1404 provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion." *Roofing & Sheeting Metal Servs. v. La Quinta Motor Inns*, 689 F.2d 982, 985 (11th Cir. 1982).

Plaintiff's motion will be denied. The vague and conclusory allegations of prejudice do not require the transfer of this action. Furthermore, all of the events

described in the complaint occurred within this district, making it the most convenient forum for this action.

Accordingly, it is ORDERED:

1. Plaintiff's Motion to Change Venue (doc. 30) is DENIED.

And it is respectfully RECOMMENDED:

1. That the following claims be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915A(b)(1) for plaintiff's failure to state a claim upon which relief can be granted:

    a. plaintiff's Eighth Amendment claim against Officer Thomas

    b. plaintiff's Eighth Amendment claim against Nurse Hamilton

    c. plaintiff's First Amendment claim against Sergeant Thomas

    d. plaintiff's Fourteenth Amendment claim against all defendants.

2. That this matter be referred to the undersigned for further proceedings on plaintiff's Eighth Amendment excessive force claim against Sergeant Thomas and Officer Donovan.

At Pensacola, Florida, this 18th day of May, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 5:15cv193-MP/CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.